

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-11-2007

# Nio v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-3304

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Nio v. Atty Gen USA" (2007). *2007 Decisions.* Paper 102.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/102

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-3304
_____

LAN HIONG NIO;
YUAN SHEN WONG,

Petitioners,

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.
_____

On Petition for Review from an
Order of the Board of Immigration Appeals
(Board Nos. A79-326-405 & A79-326-406)
Immigration Judge: Honorable R.K. Malloy
_____

Submitted Under Third Circuit LAR 34.1(a)
December 10, 2007

Before: McKEE, CHAGARES and HARDIMAN, *Circuit Judges*.

(Filed: December 11, 2007)
_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Lan Hiong Nio and her husband, Yuan Shen Wong, petition for review of an order of the Board of Immigration Appeals (BIA) denying their applications for asylum, withholding of removal, and relief under the Convention Against Torture (CAT).

## I.

Nio and Wong are Indonesian citizens of Chinese ethnicity who overstayed their visas. Following a merits hearing, Immigration Judge (IJ) Rosalind K. Malloy denied petitioners' requests for relief. The IJ found petitioners ineligible for asylum because they failed to apply for asylum within one year of their respective arrivals and failed to demonstrate extraordinary circumstances warranting a waiver of the one-year deadline. The IJ also found petitioners ineligible for withholding of removal and protection under the CAT, determining that they were not credible and that, even if they were credible, they had not shown that they would more likely than not be persecuted or tortured upon their return to Indonesia.

On appeal, the BIA adopted and affirmed the findings of the IJ in a per curiam opinion. The petitioners filed a timely petition for review.

## II.

The crux of petitioners' claims for relief is that they suffered persecution in Indonesia on account of their Chinese ethnicity and fear future persecution if they are forced to return. At their merits hearing before the IJ, both Nio and Wong described a May 1998 incident in which they were attacked by a group of native Indonesians while

coming home from work on a motorcycle. On direct examination, Wong testified that the group pushed him off of the motorcycle, punched him in the face, and struck him with a piece of wood and a broken bottle. Wong also testified that after police broke up the attack, he and his wife walked home prior to seeking medical attention at a hospital. On cross-examination, Wong stated that his wife pushed their motorcycle home after the attack, as he was too severely injured to do so himself. Wong also indicated that he did not have any records from the hospital showing that he had received treatment.

Nio also described the May 1998 attack, testifying that the group dragged her away from her husband and attempted to rape her before the police interceded. Contrary to her husband's account, Nio testified that they left the motorcycle at the scene and called a taxi. When asked about this discrepancy on cross-examination, Nio initially insisted that the motorcycle was left behind, but upon further thought said that they walked the motorcycle home.

In addition to the May 1998 motorcycle attack, Wong described an April 1998 incident in which he came home to find that their house had been looted. Wong testified that he did not report this incident to the police and was eventually able to replace the items that had been taken. Although Wong did not explicitly state the ethnicity of the looters in his testimony, a statement in Nio's affidavit indicated that their neighbors told them the looters were native Indonesians.

3

Petitioners claim they should be excused from the one-year filing deadline for asylum. Wong testified that he did not learn about the asylum process until "near the end of 2000," approximately a year after his initial arrival, and that he waited until his wife arrived in the United States before he applied for asylum. Both Nio and Wong testified that they obtained the assistance of a non-attorney asylum application preparer named "Liana." Nio testified that Liana: (1) said they needed supporting documents from Indonesia before they could apply, and (2) failed to timely file the applications even after Nio had signed her application with more than a month remaining on her one-year deadline.

The IJ found the petitioners statutorily ineligible for asylum. The IJ specifically discredited Wong's testimony that he did not learn of the asylum process until the end of 2000, noting that it would be virtually impossible not to know about asylum given that Wong associated with members of Philadelphia's Indonesian community at a time when many applications were being filed in the wake of the May 1998 riots. Furthermore, the IJ noted that, even if Wong's testimony were credible, lack of knowledge of the asylum process was not a valid ground for waiving the one-year filing deadline.

Although the IJ took administrative notice that an individual named Liana was under investigation by Philadelphia immigration authorities for filing large numbers of applications and failing to follow through on many of them, the IJ noted that Nio did not obtain "the one document that would cooberate (sic) [her] testimony" regarding Liana's

4

advice to collect documents – Wong's hospital records from the May 1998 motorcycle attack. Moreover, the IJ refused to place the blame squarely on Liana, emphasizing that Nio knew about the asylum process from the time of her arrival in the United States and "had plenty of time to file a timely application."

The IJ also found petitioners ineligible for withholding of removal and protection under the CAT, citing inconsistencies in their testimony regarding the May 1998 motorcycle attack as well as the absence of any corroborating evidence. The IJ determined that even if she were to accept petitioners' account of the May 1998 attack and the April 1998 looting, this harm did not rise to the level of persecution or constitute torture. Finally, the IJ emphasized Wong's admission that he had come to the United States because of the poor state of the Indonesian economy.

The BIA dismissed the petitioners' appeal, adopting and affirming the IJ's findings that the petitioners were statutorily ineligible for asylum and were ineligible for withholding of removal and protection under the CAT.

### III.

Although ordinarily we have jurisdiction to review applications for asylum pursuant to 8 U.S.C. § 1252(a)(1), we lack jurisdiction to review the Attorney General's determinations regarding the timeliness of asylum applications. *See* 8 U.S.C. § 1158(a)(3); *Tarrawally v. Ashcroft*, 338 F.3d 180, 185 (3d Cir. 2003) (§ 1158(a)(3) "clearly deprives us of jurisdiction to review an IJ's determination that an asylum petition

5

was not filed within the one year limitations period, and that such period was not tolled by extraordinary circumstances").  Therefore, we lack jurisdiction to review the denial of the petitioners' asylum applications on timeliness grounds.

With regard to the petitioners' applications for withholding of removal and protection under the CAT, however, we have jurisdiction to review the denials of these applications pursuant to 8 U.S.C. § 1252(a)(1).

IV.

We begin by considering the IJ's adverse credibility determination, which was adopted by the BIA.  Adverse credibility determinations are reviewed under the substantial evidence standard, which requires them to be upheld unless "any reasonable adjudicator would be compelled to conclude to the contrary." *Xie v. Ashcroft*, 359 F.3d 239, 243 (3d Cir. 2004).

Here, petitioners' testimony contained marked inconsistencies, most notably their differing accounts of the aftermath of the May 1998 motorcycle attack.  In addition, petitioners failed to present any evidence – such as hospital records or police reports – to corroborate their accounts of the motorcycle attack or the looting incident.  Accordingly, we find that a reasonable adjudicator would not be compelled to conclude that the IJ's adverse credibility determination was incorrect.

We also note that even if petitioners' testimony were true, they still have not described harm that is sufficiently severe to constitute "persecution."  In order to be

6

eligible for asylum, an applicant must demonstrate that she has suffered persecution or has a well-founded fear of future persecution. *See* 8 U.S.C. § 1101(a)(42)(A); 8 C.F.R. § 208.13(b). In *Fatin v. INS*, we defined persecution as "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life and freedom." 12 F.3d 1233, 1240 (3d Cir. 1993). Despite the troubling nature of the two incidents described by petitioners, they are nevertheless isolated criminal acts that do not meet this stringent standard. *See Lie v. Ashcroft*, 396 F.3d 530 (3d Cir. 2005) (finding that an asylum applicant suffering a knife wound and subjected to ethnic slurs during a robbery had not suffered persecution).

Petitioners also have failed to establish the "clear probability" of future persecution that is required for withholding of removal. In order to meet the less stringent "well-founded fear" standard that is applicable to asylum claims, the petitioners must demonstrate either that they face an individualized risk of persecution or that there is a "pattern or practice" of persecution of Chinese Christians in Indonesia. *Lie*, 396 F.3d at 537. Petitioners have not shown that they would be singled out for persecution upon return to Indonesia; in addition, although there is evidence that some anti-Chinese violence persists in Indonesia, it does not rise to the level of a "pattern or practice." *See Lie*, 396 F.3d at 537. Because petitioners have "fail[ed] to establish the well-founded fear of persecution required for a grant of asylum, [they] will, by definition, have failed to establish the clear probability of persecution required for withholding of deportation."

7

*Zubeda v. Ashcroft*, 333 F.3d 463, 469-70 (3d Cir. 2003).  Therefore, we conclude that petitioners' claim for withholding of removal fails.

Finally, we note that the petitioners do not provide any reason why they would be subjected to torture if they are returned to Indonesia, which dooms their claim for protection under the CAT.

V.

For the foregoing reasons, we will affirm the decision of the BIA and deny Wong and Nio's petition for asylum, withholding of removal, and protection under the CAT.